**James E. MALINA**

v.

**BALTIMORE GAS AND ELECTRIC COMPANY.**

**Civil Action No. Y–97–4309.**

United States District Court, D. Maryland.

Sept. 28, 1998.

**600**

James Charles Strouse, Columbia, MD, for James E. Malina.

Mark K. Sloane, Baltimore, MD, for Baltimore Gas and Elec. Co.

### *MEMORANDUM*

GRIMM, United States Magistrate Judge.

Plaintiff James E. Malina has sued his former employer, Baltimore Gas and Electric Company, ("BG & E") for alleged age discrimination. Currently pending are the Defendant's motion for summary judgment (Paper No. 18), Plaintiff's opposition and cross-motion for summary judgment (Paper No.

25)[1] and Defendant's reply (Paper No. 28). The case has been referred to me for final disposition with the consent of the parties. 28 U.S.C. § 636(c)(1) (1993); Local Rule 301.4. No hearing is deemed necessary. Local Rule 105.6. For the reasons set forth below, the defendant's motion is granted.

## BACKGROUND

The plaintiff began working at BG & E in 1982 at the age of 29. His employment at BG & E terminated nearly fourteen years later as part of a reduction in force in the customer service department where he worked. (Paper No. 18, Ex. 10, affidavit of Gregory C. Martin). Malina was 43 years of age at the time. According to the manager of the customer service department, Gregory Martin, as a result of corporate restructuring, the customer service department was reorganized in 1995 and seven positions were eliminated. *Id.* The process by which these jobs were eliminated was as follows. First, the personnel records of all 130 employees in the department were reviewed, and all employees with at least one "C" performance evaluation (indicating performance which was less than what was normally expected) were identified. *Id.* Eleven employees, including Malina, fell into this category. Second, the records of these eleven employees were reviewed and ranked in accordance with appraisals, corrective action reports and attendance records. Two had received corrective action reports, one of whom was Malina. In fact, Malina was the only employee to have received two corrective action reports, one in 1991, and one in 1995. *Id.* Third, seven out of the eleven employees identified as a result of the restructuring evaluation lost their jobs. Malina was one of those seven. Of those who lost their jobs, two were under 40, five were 40 or older. *Id.* From the original eleven selected because they had received a "C" rating, the four employees whose jobs were not eliminated were over 40. *Id.*

Although Malina blames the elimination of his job on age discrimination, during his deposition he described a variety of non-age related reasons why he thought he was not liked by his supervisors. For example, he testified that he had reported other employees for running pyramid games. (Paper No. 25, Ex. 1 at 46–48, 144.) He also testified that co-workers were jealous of him because he was college educated and scored well on job-related tests; that he earned the enmity of one of his supervisors, a Mr. Hartline, and another supervisor, a Mr. Wise, who was a friend of Hartline's, by dating a female co-worker who eventually married Hartline; that supervisors disliked him because he was always reporting things and filing grievances, which caused them to view him as a trouble-maker; and that co-workers did not like him because they were insecure about their positions. *Id.* at 46–48, 50–53, 58–60, 123. Although Malina evidently received some good evaluations, he admitted that he received one "C" evaluation and two disciplinary/corrective action reports. *Id.* at 85. Additionally, his job evaluations reflect the fact that Malina had frequent difficulty getting along with co-workers. (Paper No. 18, Exs. 3–9).

Malina also was unable to identify in either his deposition or interrogatory answers, any direct evidence of age-related discrimination.[2]

Malina's final complaint is that when he was notified that his customer service job was being eliminated, he was promised by the company that he would receive another job within BG & E. He states that he was one of two persons to apply for a security position at BG & E's Calvert Cliffs facility, and was the only one who passed the qualifying examination. However, he was not given the job, again, he asserts, because of age discrimination.

Malina filed suit in state court, and BG & E removed the case to this court, based upon

**1.** Although Paper No. 25 is captioned as plaintiff's motion for summary judgment and opposition to defendant's motion for summary judgment, it is clear from reviewing this paper and its two exhibits that it is in reality only an opposition to the defendant's motion for summary judgment.

**2.** In response to an interrogatory asking Malina to state the facts supporting his contention that he was discriminated against because of his age, he replied "N/A." (Paper No. 25, Ex. 1 (Malina's interrogatory answers at 3, interrogatory No. 8 and answer thereto)).

diversity of citizenship. 28 U.S.C. § 1332(b) (1993). Malina's complaint asserted a variety of causes of action, all of which, except for his age discrimination claims, were resolved against him by Chief Judge Motz, who granted BG & E's motion for judgment on the pleadings and for partial summary judgment. (Paper No. 13). The sole surviving theory advanced by Malina in this action is that the elimination of his customer service job, and the failure to give him the Calvert Cliffs security position, were acts of illegal age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 (1985), and the Maryland Fair Employment Practice Act, Md. Ann.Code Art. 49B.

## DISCUSSION

### 1. Summary Judgment Standards

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. *Pulliam Invest. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting the burden of raising a genuine issue of fact by substantial evidence to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering the defendant's motion, the Court views the underlying facts and all reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. In order to do so, the evidentiary materials submitted must show facts from which the finder of fact could reasonably find for the party opposing summary judgment. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Id.*

The Fourth Circuit has given guidance as to how to apply summary judgment principles in age discrimination cases, where the analysis can be "somewhat trickier." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993). Where, as in this case, the plaintiff relies on the *McDonnell Douglas* paradigm of circumstantial proof to establish a prima facie case of age discrimination, the plaintiff must present admissible evidence to withstand a motion for summary judgment by the defendant. If the defendant presents admissible evidence to establish a legitimate nondiscriminatory explanation for the adverse employment action, the plaintiff must present evidence that meets its ultimate burden of persuasion to show that the real reason for the action was age discrimination. *Id.* at 1315. This may include evidence advanced in support of its prima facie case. *Id.* Thus, even though the proof scheme is staged with shifting burdens, established principles of summary judgment practice are still applicable. *Id.* The essence of the inquiry will be to scrutinize the plaintiff's case to determine whether sufficient admissible proof has been offered to carry its burden at trial. *Id.* By examining the evidentiary showing made by the plaintiff in its summary judgment papers, the court may "forecast the proof at trial" to determine whether "consequential facts" are in dispute. *Id.* If they are, summary judgment is inappropriate. If they are not, it is. *Id.*

There are two ways a defendant sued for age discrimination can prevail in a motion for summary judgment. The first is to demonstrate that the plaintiff's proffered evidence fails to establish a prima facie case of discrimination. *Id.* at 1316. The second is to present evidence which provides a legitimate, nondiscriminatory explanation about which the plaintiff does not create a factual dispute. *Id.*

As will be discussed below, there are two methods by which a plaintiff may establish a prima facie case of age discrimination. Regardless of which method is selected, to withstand a defendant's motion for summary judgment, the plaintiff must proffer direct or circumstantial evidence of a stated purpose by the defendant to discriminate on the basis of age. The evidence must be of sufficient probative force to reflect a genuine issue of material fact. *Burns v. AAF–McQuay Inc.*, 96 F.3d 728, 732 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1247, 137 L.Ed.2d 329 (U.S.1997). A plaintiff successfully does so if he or she produces evidence from which a reasonable fact finder could conclude that the defendant engaged in intentional age discrimination. *Halperin v. Abacus Corp.*, 128 F.3d 191, 202 (4th Cir.1997). In "pretext cases" (discussed below), such as this one, depending on the character of the evidence produced by the plaintiff, he or she may survive summary judgment solely on the strength of the prima facie case and the evidence which contradicts the employer's allegedly legitimate, nondiscriminatory explanation if that evidence provides a factual basis for the ultimate finding of discrimination. *Vaughan v. Metrahealth Companies*, 145 F.3d 197, 202 (4th Cir.1998).

The analysis which the reviewing court must use, therefore, focuses first on the evidence which the plaintiff has the burden to identify with particularity, to determine whether it would be admissible at trial. Assuming it is, the court must then determine whether the evidence is sufficient to permit a reasonable fact finder to reach the conclusion that the reason for the adverse action at issue is intentional age discrimination by the employer. In age discrimination cases, courts within this circuit have identified principles to assist in such an evaluation. For example, derogatory remarks may be direct evidence of age discrimination. However, isolated or ambiguous statements are too abstract and too irrelevant to support such a finding. *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548–49 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996);[3] *Burns*, 96 F.3d at 732–33 (4th Cir.1996); *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 276 (4th Cir.1995). Similarly, there must be some nexus between the alleged discriminatory statements and the defendant's employment decisions which are at issue in the case. *O'Connor*, 56 F.3d at 548–49; *Collier v. Service America Corp.*, 934 F.Supp. 168, 171 (D.Md.1996). Further, an adverse employment action based on the employee's performance does not violate the ADEA even if the employee believes that his or her performance problems were age related. *Burns*, 96 F.3d at 732–33. Standing alone, an employee's self-serving claims of superiority will not support a prima facie ADEA claim. *Vaughan*, 145 F.3d at 202. Nor will the employee's own "naked opinion" that he or she was the victim of age discrimination, without more, establish a viable prima facie case of age discrimination. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 847 (4th Cir. 1988). Similarly, there is no automatic presumption that every termination of an employee between the ages of 40 and 70 results in a violation of the ADEA. *Id.* at 848. With respect to business decisions, such as layoffs, the Fourth Circuit has recognized that it is important to give an employer the latitude

**3.** In *O'Connor*, the Fourth Circuit restated the longstanding rule in this circuit which identified the four elements of the classic *McDonnell Douglas* proof scheme for age discrimination. The fourth element required a showing that the plaintiff was replaced by an employee outside of the protected range (i.e. under 40 years of age). *O'Connor*, 56 F.3d at 546. However, the Supreme Court rejected this fourth element, ruling that it is not necessary to show that the plaintiff was replaced by another employee under 40. Instead, the court ruled, the plaintiff must make a showing that creates an inference that an illegal employment decision was made based on an improper discriminatory criterion, which could include evidence that the plaintiff was replaced by a substantially younger employee. *O'Connor v. Consolidated Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Thus, while the Supreme Court partially overruled the Fourth Circuit regarding the final element of proof in a circumstantial case of age discrimination, it did not address, and hence did not overrule, the Fourth Circuit's analysis of other aspects of age discrimination cases falling outside the scope of its narrow ruling. The Fourth Circuit's ruling in *O'Connor* continues to offer useful authority, for example, on how courts must evaluate evidence of age discrimination proffered by the plaintiff at the summary judgment stage.

and autonomy to make them as long as the employer does not discriminate based on age in doing so. *Henson,* 61 F.3d at 277. If an employer's layoff decisions reflect business realities instead of age discrimination, they do not violate the ADEA. *Id.*

Further, while properly admitted statistical evidence may support an age discrimination claim, courts must remember that statistical evidence is "inherently malleable" and must therefore be scrutinized carefully, especially if drawn from samples too small to have probative value, or unsupported by expert testimony. *Vaughan,* 145 F.3d at 203. Finally, the presence of subjectivity in employee evaluations is not itself a sufficient ground for challenging the evaluations as discriminatory. *Id.* at 204. These principles must be kept in mind when evaluating the evidence of a prima facie case of age discrimination put forward by the plaintiff in response to the defendant's summary judgment motion.

Without unnecessarily belaboring this point, it is important to remember that it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion. The court must properly rely on the plaintiff to identify such facts, and is not required to independently comb the record to look for them. *Hayes v. North State Law Enforcement Officers Ass'n,* 10 F.3d 207, 215 (4th Cir.1993), *cert. denied sub nom. Price v. City of Charlotte,* — U.S. —, 117 S.Ct. 1246, 137 L.Ed.2d 328 (U.S.1997) (the

burden rests on both parties to file the necessary materials with the court to support their claims for and against summary judgment). *See also Felty v. Graves–Humphreys Co.,* 785 F.2d 516, 520 (4th Cir.1986) (the court's ruling on a summary judgment motion "is to be made on the record the parties have actually presented, not on one potentially possible"); *Shafer v. Reo Motors, Inc.,* 205 F.2d 685, 688 (3d Cir.1953); *Madeirense Do Brasil S/A v. Stulman–Emrick Lumber Co.,* 147 F.2d 399, 405 (2d Cir.1945). Similarly, the facts which the plaintiff identifies must be evidentiary facts, as required by Fed. R.Civ.P. 56(e), meaning that they must be admissible at trial. The appropriateness of these requirements is amply illustrated by this case where, in response to the defendant's motion for summary judgment, the universe of facts identified by the plaintiff in his filings consists of a copy of his deposition transcript, and an affidavit signed by him which cannot be considered because it does not comply with the requirements of Fed. R.Civ.P. 56(e) that it be based on personal knowledge.[4] Accordingly, the facts which this court properly has before it to evaluate the defendant's motion for summary judgment consist of Plaintiff's deposition transcript, as well as the exhibits attached to Defendant's summary judgment papers.

### 2. The Two Methods of Establishing a Prima Facie ADEA Claim.

The Fourth Circuit has long held that an employee may prove age discrimination in two ways: under ordinary principles of proof using direct evidence[5] relevant to

---

4. The plaintiff's affidavit, (Paper No. 25, Ex. 1), states "I swear under penalty of perjury that the foregoing is true to the best of my personal knowledge, information and belief." This appears to be a hybrid of the two distinct forms of affidavits identified by Maryland Rule 1–304. However, it is Fed.R.Civ.P. 56(e) which governs the sufficiency of the affidavit in this case, and this rule unambiguously requires that the affidavit recite facts based on personal knowledge. Statements based on "information" from other sources or personal beliefs are likely to be inadmissible under Fed.R.Evid. 802, 701. The fatal defect in Plaintiff's affidavit is that it is impossible to discern what "facts" contained within it are based on his own personal knowledge, (admissible under Fed.R.Evid. 602) as opposed to those based on "information" from other sources

or his beliefs. A review of Malina's affidavit shows it is replete with statements of his "belief" and conclusory assertions of "fact," which illustrates why it cannot properly be considered in determining whether or not he has made the requisite showing to withstand the defendant's motion for summary judgment. Thus, it is a failure of substance, not merely one of form, for a party to file a summary judgment affidavit which is based on anything other than personal knowledge.

5. The direct proof method of establishing a prima facie case of age discrimination has also been referred to as a "mixed-motive case." *Halperin v. Abacus Tech. Corp.,* 128 F.3d at 202, n. 16 (4th Cir.1997). Cases using the *McDonnell Douglas*

and probative of that issue; or under the *McDonnell Douglas* circumstantial proof paradigm used in Title VII cases (also referred to as "pretext cases"). *Tuck v. Henkel Corp.*, 973 F.2d 371, 374–75, (4th Cir.1992); *Mitchell v. Data General Corp.*, 12 F.3d at 1314–15; *O'Connor*, 56 F.3d at 545–46; *Burns*, 96 F.3d at 731; *Halperin*, 128 F.3d at 196.

 To establish a direct/mixed-motive claim for age discrimination, the plaintiff must show by direct evidence:[6] (1) that he or she is an employee covered by the ADEA; (2) that he or she suffered an unfavorable employment action by an employer covered by the act; and (3) that this occurred under circumstances in which the employee's age was a determining factor, in the sense that but for the employee's age, the employee would not have suffered the adverse action. *Tuck*, 973 F.2d at 374–75; *O'Connor*, 56 F.3d at 548.

To prove a case of intentional age discrimination under the circumstantial/pretext method, using the *McDonnell Douglas* paradigm, the Fourth Circuit originally identified the following four elements which must be shown: (1) that the plaintiff is a member of a protected class (in age discrimination cases, persons over the age of 40); (2) that the plaintiff suffered some form of adverse employment action, usually demotion or discharge; (3) that, at the time of this adverse action, the employee was performing his or her job at a level which met the employer's legitimate expectations; and (4) that, following the adverse employment action, the employee was replaced by someone of comparable qualifications outside of the protected class (i.e., someone under the age of 40). *Tuck*, 973 F.2d at 375; *Mitchell*, 12 F.3d at

1315; *O'Connor*, 56 F.3d at 546. However, the Supreme Court later ruled that it was not necessary for an age discrimination plaintiff to prove as part of the fourth element of a circumstantial/pretext discrimination case that he or she was replaced by someone outside of the age group protected by the ADEA. Such a showing, the Court held, lacks probative value inasmuch as it has no logical connection with a showing of age discrimination as defined by the ADEA. *O'Connor*, 517 U.S. at 312, 116 S.Ct. 1307. Instead, the Court said:

> [i]n our view, the proper solution to the problem lies not in making an utterly irrelevant factor an element of the prima facie case, but rather in recognizing that the prima facie case requires evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.... In the age-discrimination context, such an inference can not be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

*Id.* at 312–13, 116 S.Ct. 1307 (internal citations omitted).

Since the Supreme Court's decision in *O'Connor*, the Fourth Circuit has addressed the fourth element of proof in a circumstantial/pretext age discrimination case in a number of ways. For example, in *Burns*, the court noted that the Supreme Court had

---

circumstantial method of proving age discrimination also are referred to as "pretext cases." *Id.* A mixed motive/direct evidence case of age discrimination requires direct evidence that the defendant's decisionmakers placed substantial negative reliance on an illegitimate criterion. *Id.* If successful in this method of proof, the plaintiff qualifies for the more advantageous standard of liability established in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Under this more favorable standard, the burden of persuasion shifts to the employer to prove, by a preponderance of the

evidence, that it would have made the same decision even if it had not taken the plaintiff's age into account. *Id.* The Fourth Circuit has also noted that most age discrimination cases fall into the category of pretext cases, because direct evidence of improper discrimination is unusual. *Halperin*, 128 F.3d at 202 n. 16.

**6.** Direct evidence is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. *O'Connor*, 56 F.3d at 548.

overruled the requirement that the plaintiff show that he or she had been replaced by an employee under 40, but declined to say what the replacement for this element should be. *Burns,* 96 F.3d at 731, n. 1. Subsequently, in *Halperin,* the court said that the fourth element was that the plaintiff show that his or her discharge occurred under circumstances that raise a reasonable inference of age discrimination. *Halperin,* 128 F.3d at 201. This formula was repeated in a recent unpublished opinion, *O'Lee v. Sentara Hospital,* 1998 WL 153408, at 4 (4th Cir.1998). However, in other post-*O'Connor* decisions, the Fourth Circuit has stated the fourth element differently, namely that the plaintiff must prove that he or she was replaced by someone "substantially younger" than the plaintiff. *See e.g., Parrish v. United Steelworkers of Am.,* 1997 WL 355635, at 2 (4th Cir.1997); *Devan v. Barton–Cotton, Inc.,* 1998 WL 183844, at 4 (4th Cir.1998). [7]

▆▆ It appears that the final element of a circumstantial showing of age discrimination under the *McDonnell Douglas* proof scheme is still emerging within this circuit. Nevertheless, as the Fourth Circuit itself has pointed out, it must be kept in mind that identification of a formula for how a prima facie case of discrimination may be established is a means to an end, not the end itself. Such a formula is intended to foster judicial analysis, not be a substitute for it. Thus, the court in *Burns* cautioned that despite the "minutiae" of the various proof schemes under *McDonnell Douglas,* the straightforward question to be answered in all discrimination cases is whether the plaintiff has successfully demonstrated that he or she was the victim of age discrimination by the employer.[8] *Burns,* 96 F.3d at 732. Accordingly, by whatever formula the court wishes to employ, to withstand the defendant's motion for summary judgment, a plaintiff must produce direct or circumstantial evidence of a stated purpose to discriminate on the basis of age which has sufficient probative force to reflect a genuine

issue of material fact. *Id.* The court in *Halperin* again cautioned trial courts not to mistake the forest for the trees when it stated that the *McDonnell Douglas* framework should not be applied in a "rigid, mechanized, or ritualistic manner." *Halperin,* 128 F.3d at 196, n. 6. Instead, it should be viewed as a means to fine tune the presentation of proof and sharpen the focus on the ultimate question—whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against him or her. *Id.* As will be discussed more fully below, when the fundamental question is asked whether Malina has produced sufficient evidence to support a reasonable juror in concluding that he was the victim of intentional age discrimination by BG & E, the inescapable answer is that he has not. Before addressing this ultimate issue, however, it is necessary to discuss defendant's contention that this case does not turn on an application of the "classic" elements of the *McDonnell Douglas* circumstantial proof of age discrimination, but instead on a slightly different formulation of this proof scheme applicable to cases in which the plaintiff suffers an adverse employment action as a consequence of a reduction in force.

### 3. Reduction–In–Force Cases

In cases where an employee suffers an adverse employment action as a result of a reduction-in-force ("RIF"), the Fourth Circuit has employed a modified formulation of the classic *McDonnell Douglas* proof paradigm. This formula requires, as the fourth element, that the plaintiff establish that the process of selection which resulted in the elimination of the plaintiff's job produced a residual workforce of persons within the group containing some unprotected persons (i.e. under 40) who were performing at a lower level than at which the plaintiff was working. *Tuck,* 973 F.2d at 375; *Mitchell,* 12 F.3d at 1315; *O'Connor,* 56 F.3d at 546.

---

7. *See also Collier v. Service Am. Corp.,* 934 F.Supp. 168, 172 (D.Md.1996) (identifying the fourth element of a circumstantial showing of age discrimination as proof that the plaintiff was replaced by someone substantially younger than the plaintiff).

8. *Accord Henson,* 61, F.3d at 275 (*citing Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 511 (4th Cir.1994)).

The Supreme Court has conspicuously declined to address the Fourth Circuit cases which establish the elements of a prima facie showing in a RIF case. *See O'Connor,* 517 U.S. at 310, n. 1, 116 S.Ct. 1307. However, its emphatic ruling that the fourth element of the classic *McDonnell Douglas* formula (which requires proof that a plaintiff was replaced by an employee under age 40) is irrelevant in deciding whether a violation of the ADEA has been demonstrated casts doubt on the continuing viability of the fourth element of proof in RIF cases as currently stated by the Fourth Circuit. Research has failed to uncover any published Fourth Circuit decision analyzing the elements of a RIF case under the ADEA in light of the Supreme Court's ruling in *O'Connor.* However, two unpublished decisions from the Fourth Circuit have recognized that the Supreme Court's decision in *O'Connor* requires the modification of the fourth prong of an ADEA RIF claim to conform with that Court's decision. *See Fryer v. Engelhard Corp.,* 1997 WL 342561, at *1 (4th Cir.1997) (requiring the plaintiff to prove "that substantially younger persons were retained in the same position or that there was some other evidence that the employer did not treat him age neutrally·in deciding to dismiss him"); *Denio v. Asplundh Tree Expert Co.,* 1996 WL 423125, at *4 & n. 2 (4th Cir.1996) (requiring the plaintiff to show that "persons of his qualifications were retained in the same position or there was some other evidence that the employer did not treat age neutrally in deciding to dismiss plaintiff").[9]

▆▆▆▆▆ Thus, it may well be that, following the Supreme Court's decision in *O'Connor,* there is no longer any meaningful distinction between the showing which must be made to establish a prima facie case of age discrimination under either a traditional *McDonnell Douglas* discharge/demotion or a RIF case.[10] In either, it would seem that the plaintiff must establish a prima facie case of age discrimination by showing: (1) that he or she is a member of the class protected by the ADEA; (2) that he or she suffered some form of adverse employment action; (3) that at the time of this action, the employee was performing at a level which met the employer's legitimate expectations; and (4) there is additional evidence indicating that the employer did not treat age neutrally in deciding to impose the adverse action. With respect to the final element, the fact that employees substantially younger than the plaintiff, whose performance was inferior to the plaintiff's, were not subject to the same adverse action as the plaintiff undoubtedly will be relevant to showing improper discrimination. Whether it alone is sufficient to meet the plaintiff's burden, however, will depend on the facts of each particular case.

One final area needs to be discussed before turning to the facts of this case. It is how a plaintiff, who has established a circumstantial showing of age discrimination, must respond to a defendant employer's assertedly legitimate, nondiscriminatory explanation for the adverse action, in order to avoid the entry of summary judgment in favor of the defendant.

**4. Pretext Cases**

▆▆▆▆▆ As already noted, if a plaintiff proves a prima facie case of age discrimination under the *McDonnell Douglas* proof method, then the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the adverse action. *Mitchell,* 12 F.3d at 1314–15. If the employer provides an explanation which, if believed, would support the conclusion that discrimination was not a determining factor with respect to the action

**9.** In another unpublished Fourth Circuit decision that was decided after the Supreme Court's decision in *O'Connor,* the Court did not alter the fourth prong of an ADEA RIF claim. *See Cvijanovic v. Loral Corp.,* 1996 WL 516157, at *2 (4th Cir.1996). However, the Court did not discuss the impact of the *O'Connor* decision as the *Denio* and most recent *Fryer* decision did; and thus, it would appear that the Fourth Circuit trend is to modify the fourth prong in light of the *O'Connor* decision.

**10.** If so, this would be a helpful result, considering the fact that it is not always clear when, as a threshold matter, the RIF cases will be applicable, as opposed to the traditional *McDonnell Douglas* format. *See e.g., O'Connor,* 56 F.3d at 546 (declining to apply RIF analysis to a "reduction in force" of only 2 people).

complained of by the plaintiff, then the presumption created by the prima facie case "drops from the case." [11] Subsequently, the plaintiff bears the ultimate burden of proving intentional discrimination by showing that the defendant's explanation is mere pretext. *Id.* at 1315. To prove pretext, the plaintiff must show that, as between the plaintiff's age and the defendant's explanation, age was more likely the reason for the adverse action, or that the employer's explanation is unworthy of belief. *Tuck,* 973 F.2d at 375. However,

> a showing of pretext demands the same type of proof—affirmative evidence of discriminatory intent—required under traditional principles, but not necessarily the same quantum. Affirmative proof that alone does not suffice under the traditional scheme may, when combined with the weakness of the defendant's asserted nondiscriminatory reasons, create a prima facie case of pretext.

*Burns,* 96 F.3d at 732 (4th Cir.1996). Further, the Fourth Circuit has acknowledged that depending on the character of the evidence in each case, a discrimination claim may survive summary judgment solely on the strength of the prima facie case and the evidence that contradicts the employer's proffered justification, if that evidence provides a factual basis for the ultimate finding of discrimination. *Vaughan,* 145 F.3d at 201. The court added, however, that it did not think that the Supreme Court meant to say that a finding of discrimination would always be permissible once pretext is found. A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason is false and that discrimination was the real reason. *Id.* at 201–02. The court concluded that to survive summary judgment under the *McDonnell Douglas* paradigm, the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. *Id.* at 202. Instead, the employee must have developed some evidence on which a juror could

reasonably base a finding that discrimination motivated the challenged employment action. *Id.* Accordingly, the employer is entitled to summary judgment unless the ADEA plaintiff has adduced sufficient evidence "both that the [proffered nondiscriminatory] reason was false and that age discrimination was the real reason." *Id.* The Fourth Circuit described this approach as requiring a showing of "pretext plus." *Id.* The court noted that the ADEA does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reasons of age. *Id.* Therefore, the fact that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily mean that the plaintiff's proffered reason of age discrimination is correct. *Id.* For reasons which will next be discussed, Malina has failed to carry his burden of demonstrating a prima facie case, and also has failed to establish "pretext plus" in response to BG & E's proffered legitimate, nondiscriminatory explanation.

■ Malina acknowledges that he has no direct evidence of age discrimination. Therefore, he is proceeding under the *McDonnell Douglas* proof method to establish a prima facie case of age discrimination. (Paper No. 25 at 9–11). He asserts that he has established a prima facie case because BG & E has conceded in its summary judgment papers that Malina was within the protected age group, suffered the elimination of his job through a RIF,[12] and at the time this occurred, he was performing at a level substantially equivalent to the lowest level of those retained after the RIF. (Paper No. 25 at 9–10; Paper No. 18 at 9). The flaw in Malina's reasoning is that he mistakenly believes that by establishing a showing of these three elements, he has met his initial burden. Under either the classic *McDonnell Douglas* proof method, or the slightly different RIF proof method, discussed in detail above, Ma-

---

11. If the presumption drops from the case, however, the evidence used by the plaintiff to establish the prima facie case remains in the case, along with any additional evidence offered to prove pretext. *Mitchell,* 12 F.3d at 1317.

12. Malina apparently agrees with BG & E that it is appropriate to analyze this case using the "RIF" cases instead of the classic *McDonnell Douglas* cases.

lina is required to produce additional evidence from which a reasonable juror could conclude that Malina lost his job due to age discrimination. *Halperin*, 128 F.3d at 201. Such evidence would be, for example, that following the RIF, there was a residual workforce of persons within the group containing some persons substantially younger than Malina who were performing at a lower level than that at which he had been working.[13] *Mitchell*, 12 F.3d at 1316; *O'Connor*, 56 F.3d at 547. Malina acknowledges that he lost his job because he voiced complaints and made management look bad, that his work experience was unfavorable because his work leaders and fellow employees made his life difficult as a result of professional jealousy, and his role in reporting illegal pyramid schemes to the Office of the Attorney General. (Paper No. 25 at 3–5). Even taken in the light most favorable to the plaintiff, these facts simply would not warrant a reasonable juror in concluding that the real reason why Malina lost his job was age discrimination. *Mitchell*, 12 F.3d at 1317; *Burns*, 96 F.3d at 732; *Halperin*, 128 F.3d at 202.

▮▮▮▮▮▮ For the purpose of analysis, even assuming that Malina established a prima facie showing under the *McDonnell Douglas* proof scheme, the defendant would still be entitled to summary judgment because Malina has failed to show that BG & E's proffered legitimate, nondiscriminatory explanation was pretextual. In response to BG & E's showing that Malina's job was eliminated as a result of an analysis of all 130 employees in his work department, from which eleven were selected based on work performance criteria which were age neutral, and finally, the poorest seven performers were selected to lose their jobs, Malina does not attempt to attack the credibility of this proffered explanation. Indeed, he readily admits that he received one "C" evaluation and two disciplinary reports, the performance criteria which resulted in his losing his job. (Paper

No. 25 at 11, Ex. 1 at 85–87). Instead, Malina asserts, in conclusory fashion, that these reports were not accurate or truthful, and were inherently "subjective." [14] Therefore, he urges, they should be looked at critically. Even if Malina had produced admissible, non-conclusory facts to support his opinion that the evaluations and disciplinary action reports were untrue, which he has not, he still has not shown "pretext plus," which requires a showing that the employer's explanation was both false, and that the real reason was age discrimination. *Vaughan*, 145 F.3d at 202. Malina received his "C" evaluation and the first of his disciplinary action reports in October 1991 when he was 38 years old. (Paper No. 18, Ex. 3, 4). Even if his job performance did not warrant these evaluations, it cannot be concluded that they were imposed as a result of illegal age discrimination, because Malina was not at that time within the protected class. While his third disciplinary report was received after he turned 40, (Paper No. 18, Ex. 5), Malina has failed to produce admissible evidence to show both that the reasons stated by BG & E for the adverse action were false and that the real reason was age discrimination. The best he has done is to give his unsupported opinion that the third disciplinary report was unwarranted. This is insufficient to create a triable issue of fact. *See Burns*, 96 F.3d at 732–33 (adverse employment action based on employee's performance does not violate ADEA even if employee believes that his or her performance problems were age-related); *Goldberg*, 836 F.2d at 847 (employee's own "naked opinion" that he or she was the victim of discrimination, without more, will not establish a prima facie showing of age discrimination). Indeed, the exhibits attached to BG & E's summary judgment papers, as well as Malina's own admissions, establish that his job performance difficulties started long before his 40th birthday, and were not attribut-

---

13. I acknowledge the slight modification of the fourth element of a RIF case to require proof that the residual workforce contained workers "substantially younger" than the plaintiff, instead of a showing that it contained "unprotected workers." I do so because of uncertainty whether the latter formula continues to be viable following the reasoning used by the Supreme Court

in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

14. The fact that a job evaluation may be "subjective" is not itself grounds for challenging it as discriminatory. *Vaughan*, 145 F.3d at 203.

able to intentional age discrimination. Therefore, Malina has failed to meet his burden of production at the summary judgment stage, and BG & E is entitled to summary judgment with respect to his claim that the elimination of his job violated the ADEA.

### 5. Failure to Hire

Malina additionally asserts that after he was notified that his job would be terminated by the RIF, he was promised another job at BG & E, and that he applied for, but was not hired, to be a security guard at the defendant's Calvert Cliffs facility. He testified during his deposition that he was told by a Ms. Laraine Tyska of the personnel department of the Calvert Cliffs facility that only two people applied for the position and took the examination for it, and that he was the only one to pass. (Paper No. 25, Ex. 1 at 82–83). Because he did not get the job, he testified that he felt his age was the reason. *Id.* He further testified that he was told by a Ms. Rea Johnson, evidently an employee of the defendant whose exact position is not disclosed in the record, that he would never get another job at BG & E because his personnel folder would doom him. *Id.* at 148–49. Unfortunately, the factual record presented to me to resolve this claim is very sparse, a condition exacerbated by the fact that the defendant chose to ignore it in its summary judgment papers. Despite the paucity of information, however, there is enough for me to conclude that the plaintiff has failed to present sufficient evidentiary facts to survive summary judgment on this claim as well.

 To prove a "failure to hire" claim under the ADEA, a plaintiff must prove: (1) that he or she is a member of the protected class, i.e. at least 40 years old; (2) that he or she was qualified for the job for which the employer was seeking applicants; (3) that he

or she was rejected for the job despite being qualified; and (4) that the position remained open and the employer continued to seek or accept applications from persons outside the protected class with the same qualifications. *Henson,* 61 F.3d at 274.[15] Other than the plaintiff's own testimony that he passed the examination for the security job, he makes no effort to describe the job, or the qualifications required for it, to show that he was qualified for the position. There is some indication in the record, again sparse, that some of the requirements for the position were tact, diplomacy and the ability to react to adverse situations. (Paper No. 25, Ex. 1 at 85–84). However, Malina has not produced any evidence to show that he met these qualifications.

Even more importantly, Malina has completely failed to proffer any evidence at all that after he was turned down for the position, it remained open and the employer continued to seek or accept applications from persons with his qualifications, who were under 40, or substantially younger than him, or otherwise demonstrate that the reason why he did not get the job was due to intentional age discrimination by BG & E. In this connection, Malina's testimony about the statement made to him by Ms. Johnson is unavailing. First, there is nothing in the record before me to identify who Ms. Johnson was, whether she had personal knowledge of the facts attributed to her, and her exact position with the defendant. In this evidentiary vacuum, I would be forced to speculate as to whether Ms. Johnson had personal knowledge as required by Fed.R.Evid. 602, or, alternatively, whether, as a result of her undefined position with the defendant, her statements to Malina would constitute an admission under Fed.R.Evid. 801(d)(2). It is the court's obligation to make preliminary determinations regarding the admissibility of evidence and the qualification of witnesses.

15. The *Henson* case was decided before the Supreme Court's decision in *O'Connor,* 517 U.S. 308, 116 S.Ct. 1307. While *O'Connor* does not directly address the fourth element of a failure to hire claim under the ADEA, as interpreted by the Fourth Circuit, there is some doubt following *O'Connor* as to the continued viability of the requirement in the fourth element of proof that the plaintiff demonstrate that the defendant con-

tinued to seek or accept applications from persons with his or her qualifications "outside the protected class" (i.e. under 40). The better showing may be that the defendant sought or accepted applications from persons "substantially younger," or other evidence that there was age discrimination by the employer in connection with the decision not to hire the plaintiff.

Fed.R.Evid. 104(a). It must have facts upon which to make such a determination, however. There are no such facts before me which would permit me to admit the statement which Malina attributes to Ms. Johnson. Accordingly, it cannot be considered at this juncture in support of his failure-to-hire claim. Moreover, even if I were to assume, arguendo, that it was admissible, it still would not be sufficient evidence of age discrimination, since her statement referred to his personnel folder, not his age. (Paper No. 25, Ex. 1 at 149–50). This folder, Malina acknowledged, contained the "C" performance appraisal and corrective action reports, which the plaintiff has not demonstrated were the result of age discrimination. Thus, what Johnson told Malina was that his performance problems, not his age, would hinder his future employment prospects. For these reasons, BG & E is also entitled to summary judgment on the failure-to-hire claim.

### 6. State Statutory Claim

Malina's final claim is that his treatment by BG & E violated Md.Code.Ann.Art. 49B § 14 et seq. Unfortunately, Malina does nothing more than cite this statute, and his summary judgment papers are entirely void of any analysis of it. Nevertheless, this claim may be disposed of easily. This Court has previously held that the above statute, although addressing employment discrimination, does not create a private cause of action. *Jordan v. CSX Intermodal, Inc.,* 991 F.Supp. 754, 756, n. 1 (D.Md.1998). For that reason, BG & E is entitled to summary judgment on this claim as well.

### CONCLUSION

For all the foregoing reasons, the defendant's motion for summary judgment as to the remaining claims asserted against it by the plaintiff is GRANTED.